UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMANDA POUNDS, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | **With Jury Demand Endorsed Hereon** |
| | ) | |
| and | ) | |
| | ) | |
| UNITED AUTO CREDIT, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW Plaintiff Amanda Pounds, by and through undersigned counsel, and for her Complaint against the Defendants, Equifax Information Services, LLC and United Auto Credit, states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Amanda Pounds ("Plaintiff") is a natural person that resides in Omaha, Nebraska.

3. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

4. United Auto Credit ("United Auto") is a foreign corporation that regularly transacts business in the State of Nebraska.

5. United Auto is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

6. Equifax Information Services, LLC ("Equifax") is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

7. Equifax is a foreign limited liability company that regularly transacts business in the state of Nebraska.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

9. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

10. In 2016, Plaintiff fell into serious financial distress and eventually filed for bankruptcy in the United States Bankruptcy Court for the District of Nebraska, Case No: 8:16-80627-SKH, on April 22, 2016.

11. A defaulted auto loan owner or serviced by United Auto was included in Plaintiff's petition for relief.

12. On or about September 12, 2016, the Bankruptcy Court issued a Final Decree granting Plaintiff a discharge.

13. The Final Decree terminated any rights United Auto (or any purported assignee thereof) had

against Plaintiff with respect to the underlying debt.

14. The Final Decree was mailed out to all creditors and other parties listed on the mailing matrix previously filed with the Bankruptcy Court, including United Auto.

15. At no time did United Auto (or any purported assignee thereof) object to or dispute the details of the claim in Plaintiff's bankruptcy petition.

16. At no time during the Chapter 7 bankruptcy case did Plaintiff reaffirm the debt with United Auto (or any purported assignee thereof).

### Equifax Refuses to Report the United Auto Account Correctly After Bankruptcy

17. In early April 2020, almost four (4) years after receiving her bankruptcy discharge, Plaintiff began looking into purchasing a new home.

18. In furtherance of that goal, Plaintiff obtained a copy of her Equifax credit report through a third-party credit report provider.

19. Plaintiff was shocked and dismayed to discover that the United Auto account, although discharged, was inaccurately reporting as past due and still owing.

20. Plaintiff was concerned and fearful as to what this meant. Had she really gotten her fresh start from her bankruptcy discharge? Would this mean a higher interest rate if and when she applied for a mortgage?

21. On or about April 21, 2020, in an effort to minimize any damage from what she believed must be a simple mistake, Plaintiff contacted Equifax to dispute the inaccurate information on his credit report.

22. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, Equifax was then required to reasonably investigate Plaintiff's dispute, as well as forward a copy of Plaintiff's dispute letter to the furnisher of the disputed information, including United Auto.

23. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, United Auto was then obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

24. However, after approximately 45 days, Plaintiff still had not received any response from Equifax or United Auto.

25. Plaintiff's stress and anxiety mounted, as she had worked diligently to conduct herself in a financially responsible matter following her bankruptcy and this was anchoring down her credit scores.

26. Anxious to fix this issue, on or about May 26, 2020, Plaintiff again disputed the United Auto account on his Equifax report.

27. However, again Plaintiff did not receive any investigation results from Equifax or United Auto.

28. Plaintiff could not understand why her Equifax report continued to reflect inaccurate and negative information.

29. Equifax and United Auto were on notice of her bankruptcy discharge. Was Equifax processing her disputes accurately? Why was United Auto continuing to report a balance?

30. Plaintiff sent additional letters to Equifax about the United Auto account, on August 18, 2020 and October 1, 2020.

31. Eventually, Plaintiff received a letter from Equifax in late November 2020 that it had investigated Plaintiff's disputes but determined that everything was reporting accurately and would not be changed.

32. Plaintiff was, understandably, very angry.

33. Despite Plaintiff notifying Equifax at least four times about the inaccuracies on her report, Equifax failed to correct the issue.

34. Upon information and belief, United Auto received Plaintiff's disputes from Equifax and "verified" the accuracy of the credit reporting.

35. Plaintiff justifiably fears, absent litigation, that Equifax and United Auto will continue to report the inaccurate information on her credit report.

36. Upon information and belief, both Equifax and United Auto have received dozens, if not hundreds, of disputes from consumers, like Plaintiff's, complaining that debts discharged in bankruptcy continue to be reported and wrongly "verified" as due, owing and delinquent.

37. Nevertheless, both Equifax and United Auto continue to "verify" the false information on Plaintiff's credit report.

38. Upon information and belief, United Auto intentionally, knowingly and recklessly "verifies" discharged debts as still owing as a tool to pressure consumers, like Plaintiff, to voluntarily pay debts that are not legally owed, and Equifax has refused to prevent them from doing it.

39. Plaintiff has lost all trust in the credit reporting system and believes that litigation is her only option to fix her credit reports.

## FIRST CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Equifax**

40. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

41. A "consumer reporting agency" is defined by the FCRA as follows:

42. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer

reports. 15 U.S.C. § 1681a(f).

43. Equifax is a "consumer reporting agency" as defined by the FCRA.

44. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

45. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

46. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

47. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

### Equifax's Reasonable Reinvestigation Violations

48. By letters dated April 21, 2020, May 26, 2020 August 18, 2020, and finally on October 1, 2020, Plaintiff disputed the inaccurate United Auto account information appearing on her Equifax credit report.

49. Plaintiff specifically advised Equifax that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade line be deleted accordingly.

50. Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

51. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

52. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

53. As a direct and proximate result of Equifax's willful and/or negligent refusal to delete false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

54. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files following a bankruptcy discharge despite being on notice of the substantial risk of false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

55. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Equifax's Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

56. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer

7

report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

57. On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

58. Despite actual and implied knowledge that the United Auto loan was discharged in bankruptcy, Equifax readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Equifax reported.

59. On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

60. Through Plaintiff's communications with Equifax, Equifax knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Equifax took no measure to stop painting a false and damaging picture about Plaintiff.

61. Plaintiff suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Equifax's pockets.

62. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant

to 15 U.S.C. § 1681o.

63. Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including its failure to update accounts included in bankruptcy, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

64. Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Equifax, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

### SECOND CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by United Auto**

65. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

66. United Auto is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

67. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. §

1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

68. On at least four (4) occasions, namely April 21, 2020, May 26, 2020 August 18, 2020, and finally on October 1, 2020, Plaintiff contacted Equifax specifically to dispute the accuracy of the derogatory United Auto account being reported about her.

69. Plaintiff specifically advised Equifax on each occasion that the information being reported was false, provided all necessary information to Equifax to support her dispute, and requested the false information be deleted accordingly.

70. Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), United Auto received notification of these disputes from Equifax.

71. Nevertheless, on multiple occasions in the last two (2) years, the false United Auto account was allowed to remain on Plaintiff's credit report under the guise that United Auto had "verified" the information as true.

72. Either United Auto conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow confirmed information known to be false and highly damaging to remain in Plaintiff's credit file.

73. United Auto's failures in this regard are exacerbated by the sheer number of times United Auto was contacted about this particular account.

74. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, United Auto negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

75. As a direct and proximate result of United Auto's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to:

financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

76. United Auto's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against United Auto, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against United Auto, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,

By: **s/Andrew M. Esselman**

Andrew M. Esselman
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 200
Lee's Summit, MO 64064
Tele: (816) 246-7800
Fax: (855) 523-6884
andrewe@creditlawcenter.com
**Attorney for Plaintiff**